1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  MAYA KARWANDE (CABN 295554)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
7       Email: maya.karwande@usdoj.gov

8  Attorneys for United States of America

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12
   UNITED STATES OF AMERICA,           )  CASE NO. 3:25-CR-00352-JSC
13                                      )
              Plaintiff,                )  **GOVERNMENT'S SENTENCING**
14                                      )  **MEMORANDUM AND MOTION FOR JOINT**
       v.                              )  **CHANGE OF PLEA AND SENTENCING**
15                                      )
   BRAYAN IZAGUIRRE-ESTRADA,           )  Hearing Date:   November 5, 2025
16     aka Brian Isaguire-Estrada       )  Hearing Time:   10:00 a.m.
       aka Brian Ariel Isaguire-Estrada )  Judge:          Hon. Jacqueline Scott Corley
17     aka Hector Cruz,                 )  Court:          Courtroom 8; 19th Floor
                                        )
18            Defendant.                )
                                        )
19

20                    I.    **OVERVIEW**

21         The government and the defendant, BRAYAN IZAGUIRRE-ESTRADA (aka Brian Isaguire-

22  Estrada, aka Brian Ariel Isaguire-Estrada, aka Hector Cruz), jointly request that the Court accept the

23  proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).  This case is part of the

24  United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug

25  market that exists in San Francisco's Tenderloin District (hereafter, "the Tenderloin") through a

26  combination of enforcement and dispositions that prevent drug traffickers from returning to the

27  Tenderloin.  These efforts will occasionally take the form, as here, of prosecution of street-level dealing

28

where the defendant has limited criminal history with no federal convictions, leading the government to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the government and the defendant believe that a below-Guidelines sentence—accounting for the time already served plus one court day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II.    MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1); U.S.S.G. § 6A1.1; Crim. L.R. 32-1(b). The government respectfully submits that the record here—including the criminal complaint, the plea agreement, and the parties' sentencing memoranda, which each and collectively detail the offense conduct and other factors relevant under Section 3553—enable the Court to meaningfully exercise its sentencing authority under Section 3553 and to proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at sentencing.

## III.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a.    **Base Offense Level** [U.S.S.G. § 2D1.1(a)(5), (c)(11)]:                **18**
   - *Converted drug weight: 40-60 kg*[1]

b.    **Acceptance of Responsibility** [U.S.S.G. § 3E1.1]:                **-3**

c.    **Adjusted Offense Level**:                **15**

---

[1] *See* Addendum – Converted Drug Weight Table.

The government calculates a Criminal History Category of III (2 points).[2]

An Adjusted Offense Level of 15 and a Criminal History Category of II yields an advisory Guidelines range of 21-27 months. *See* U.S.S.G. ch. 5, pt. A.

The government also seeks a three-year term of supervised release (as required by statute) and imposition of the mandatory $100 special assessment.

## IV.    SENTENCING RECOMMENDATION

Consistent with the plea agreement in this case, the parties jointly request a sentence of time served plus one court day and a three-year term of supervised release that includes, among other things, a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from which the defendant's drug trafficking conviction arises.

### A.    Section 3553 Factors

1.    *Nature and Circumstances of Offense; History and Characteristics of Defendant*

The defendant is a 38-year-old Honduran national. According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals Service. To the government's knowledge, Izaguirre-Estrada has two prior criminal convictions, as described above, which place him in Criminal History Category II. The defendant also has a pending a 2024 drug distribution case in San Francisco that he was attending drug court for at the time of his arrest. Though Izaguirre-Estrada has had multiple brushes with the law while engaging in street level drug dealing activity, he had not faced charges in federal court until this case.

On October 14, 2025, at about 10:40 p.m., an undercover San Francisco Police Department

---

[2] The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database. In addition, the government has reviewed and produced in discovery records from San Francisco county that show the defendant has two prior criminal convictions: felony accessory after the fact in violation of California Penal Code 32 for a drug distribution offense in San Francisco on May 3, 2024 (1 point) and felony accessory after the fact for a drug distribution offense in San Francisco on July 26, 2024 (1 point). *See* Plea Agreement ¶ 2. In addition, a Criminal History only report was also prepared by Pretrial Services, but these convictions did not appear on that report.

1  officer (UC) approached the defendant on the street in the Tenderloin District of San Francisco.  The UC

2  asked the defendant for "crystal," which is slang used on the street to mean methamphetamine  The UC

3  then negotiated a deal with Izaguirre-Estrada for $40.00 worth of methamphetamine. During the

4  narcotics transaction, Izaguirre-Estrada retrieved a clear plastic bag from his person, pulled out pieces of

5  methamphetamine from the clear plastic bag, and broke the methamphetamine up in his hand. Izaguirre-

6  Estrada then gave the broken-up pieces of methamphetamine to the UC.  The UC poured the pieces of

7  methamphetamine into a clear Ziploc bag of his own and handed Izaguirre-Estrada $40.00 of marked

8  official bills.  Izaguirre-Estrada was arrested at the scene, and law enforcement found $240,

9  methamphetamine, crack cocaine (cocaine base), suspected heroin, the marked bills, and three phones.

10  Dkt. 1 at ¶¶ 12–16.

11      The methamphetamine that Izaguirre-Estrada sold to the UC weighed roughly 4.0 grams (gross)

12  and tested presumptive positive for methamphetamine using a TruNarc Analyzer.  The other substances

13  found after the search incident to arrest search incident to arrest, officers found the following controlled

14  substances—most of which tested presumptive positive for these substances using a TruNarc

15  Analyzer—on the defendant's person: 16.3 grams (gross) of a mixture and substance containing

16  methamphetamine, (ii) 4.5 grams (gross) of cocaine base, and (iii) 6.0 grams (gross) of suspected heroin

17  (unconfirmed by TruNarc Analyzer due to nature of heroin).  *See* id. ¶ 18; Plea Agreement, ¶ 2.

18  Izaguirre-Estrada has admitted that the money and phones seized from him are forfeitable to the

19  government. *See* Plea Agreement ¶ 13.

20      After his arrest on October 14, 2025, Izaguirre-Estrada was charged by complaint and made his

21  initial appearance in this case on October 16, 2025.  He waived detention findings at his initial

22  appearance and has remained in custody since then.  On October 23, 2025, he was arraigned on an

23  Information charging one count of possession with intent to distribute methamphetamine, in violation of

24  21 U.S.C. § 841(a)(1) and (b)(1)(C).  *See* Dkt. 7.  In the plea agreement, the defendant acknowledges

25  that he knew the substance he possessed and sold to an undercover law enforcement officer on October

26  14, 2025, contained methamphetamine; and that it was illegal for him to sell methamphetamine.  The

27  defendant further admits that he knowingly possessed the bag of methamphetamine found on his person

28  with the intent to distribute it to others.  *See* Plea Agreement ¶ 2.  He further acknowledges that his

1    conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed

2    or deported from the United States."  Plea Agreement ¶ 1.

3             2.   ***Need for Sentence to Reflect the Seriousness of the Offense, to Promote Respect for
                   the Law, and to Provide Just Punishment; to Afford Adequate Deterrence to
4                  Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant***

5           The Tenderloin, defined in the plea agreement to include the historic Tenderloin District and

6    much of the South of Market neighborhood, is in crisis.  As the Court is well aware, the proliferation of

7    highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and

8    methamphetamine has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug

9    market not only creates suffering for its participants—including staggering amounts of overdoses and

10   fatalities—but also dire externalities for the people and families that live and work in the Tenderloin, as

11   well as for San Francisco itself.  The effects of Izaguirre-Estrada's offense, considered as an individual

12   act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

13          The applicable Guidelines range for Izaguirre-Estrada's conduct is 21-27 months in light of the

14   relevant conduct and amount (and variety) of controlled substances the defendant possessed at the time

15   of his arrest.  The proposed sentence—of time served plus one day and a three-year term of supervised

16   release with a highly-restrictive geographic restriction—is a downward variance from the applicable

17   Guidelines range but one that the government submits is appropriate given Izaguirre-Estrada status as a

18   street-level drug dealer, the unique problem facing the Tenderloin, and the need for deterrence and

19   protection of the public.  While he does have two prior criminal convictions, he has never sustained a

20   federal conviction.  Therefore, while Izaguirre-Estrada's past drug dealing conduct is concerning, the

21   parties' proposed resolution is appropriate for several reasons.

22          To benefit from an agreement by the government to recommend a sentence of time served plus

23   one day, Izaguirre-Estrada  waived detention and has been in continuous custody since his arrest on

24   federal charges.  He also waived indictment, agreed promptly to plead guilty and proceed to sentencing,

25   and agreed to be subject to a three-year term of supervised release that includes a strict stay-away

26   condition from the Tenderloin.  The defendant is on notice that a return to the Tenderloin (in violation of

27   his supervised release terms) will invite new charges and/or supervised release violations.  He is also

28   aware that it is virtually certain that he will be deported following the conclusion of his case.

1  This disposition results in a drug-trafficking conviction within weeks of arrest (not months or

2  years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from

3  returning to the Tenderloin. The speed with which this case has moved will free up other government

4  resources to prosecute additional federal crimes, including in the Tenderloin.  And with this federal

5  conviction, Izaguirre-Estrada is now on notice that any subsequent criminal conduct will be met with the

6  government advocating for a far greater sentence.

7       **B.      The Necessity of the Proposed Special Conditions of Supervised Release**

8       A three-year term of supervised release is required by statute for the drug-trafficking offense to

9  which the defendant has agreed to plead guilty.  *See* 21 U.S.C. § 841(b)(1)(C).  It is also essential to this

10  disposition.  In particular, the special stay-away condition of release allows the government to accomplish

11  one of its primary goals related to protection of the public: to immediately separate drug dealers from

12  the Tenderloin (given the defendant has remained in custody since he was arrested) and to effect a strict

13  stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated

14  herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, he will

15  also be prohibited from entering the Tenderloin without prior approval of the Probation Office:

16       Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in
       the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter
17       Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

18  Plea Agreement ¶ 10.  Combined with a suspicionless search condition—to which the parties have also

19  agreed, *see id.*—the goals of Section 3553(a), including protection of the public and meaningful

20  deterrence, will be significantly advanced by the terms of this agreement, and this prosecution's impact

21  on illicit drug trafficking in the Tenderloin will be both immediate and sustained.  The stay-away

22  condition is also necessary given the particular circumstances of Tenderloin drug trafficking: defendants

23  previously convicted of selling drugs in the Tenderloin are prone to recidivate, and they frequently

24  return to the Tenderloin to do so, even following removal from the United States.  *See, e.g.*, *United*

25  *States v. Erazo-Centeno*, No. 3:23-cr-00002 CRB; *United States v. Gamez-Arguilio*, No. 3:17-cr-00553

26  CRB.

27       On the facts of this particular case, and in light of the provisions of the parties' plea agreement,

28  the government respectfully submits that the disposition recommended herein is sufficient but not

greater than necessary to accomplish the goals of Section 3553(a).

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence Izaguirre-Estrada to time served plus one court day, to be followed by a term of supervised release of three years, to include the special conditions of supervision agreed to by the parties in the plea agreement, including the stay-away condition from the Tenderloin.


DATED:  October 29, 2025                              Respectfully Submitted,


                                                      CRAIG H. MISSAKIAN
                                                      United States Attorney


                                                       /s/ Maya Karwande
                                                      MAYA KARWANDE
                                                      Assistant United States Attorney

ADDENDUM – CONVERTED DRUG WEIGHT TABLE [3]

| Substance | Def. Possessed | Conversion | Converted Drug Weight |
|---|---|---|---|
| Methamphetamine | 16.3 g | 1 g = 2 kg | 32.6 kg |
| Crack Cocaine | 4.5 g | 1 g = 3,571 g | 16.6 kg |
| Heroin | 6 grams | 1 g= 1kg | 6 kg |
| | | | **~55.2 kg** |
| **Total** | **-** | **-** | **~ 40–60 kg** |

---

[3] *See* U.S.S.G. § 2D1.1 cmt. n.8(D).